IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THEODORE M NICKENS,         :
       Plaintiff,       :
       v.               :  Case No. 3:05-cv-301-KRG-KAP
DAVID J. GOOD, WARDEN, S.C.I.  :
CRESSON, et al.,            :
       Defendants       :

## Report and Recommendation

### Recommendation

Pending are motions by two sets of defendants to dismiss plaintiff's complaint, docket no. 19 and docket no. 29, and plaintiff's motion for partial summary judgment on the issue of liability, docket no. 35. In light of the record, the motion to dismiss should be granted in whole as to defendants Superintendent Good, Deputy Superintendent Knott, Superintendent Assistant Reifer and Health Care Administrator Sadosky, and the motion to dismiss should be granted in part as to defendants Anton Skerl, M.D., P.A. Mark McConnell and P.A. Stephanie Hoover. The latter defendants' motion to dismiss the Eighth Amendment claim is converted to a motion for summary judgment: the plaintiff is directed to come forward, on or before April 21, 2007, with all evidence from which he contends a conclusion can be drawn that the medical care providers named as defendants have deliberately disregarded his serious medical needs. Plaintiff's motion for partial summary judgment should be denied.

Report

Plaintiff has been incarcerated at S.C.I. Cresson since December 2004, having been transferred from S.C.I. Rockview after being released from a federal sentence he had been serving at F.C.I. Allenwood.  Plaintiff alleges that plaintiff has diabetes, treated with twice daily insulin injections and has an injury to his right hand (plaintiff describes it as carpal tunnel syndrome) for which he was prescribed a hand brace approximately 14 years ago.  While plaintiff was in federal custody, the Bureau of Prisons ordered special shoes for plaintiff and permitted him to wear his hand brace.  When he was transferred to S.C.I. Cresson, plaintiff had his hand brace confiscated and his special shoes sent home (although plaintiff also states that he was told he could wear them if he had them sent to him by his family and they passed security) and was issued an uncomfortable pair of shoes by the Pennsylvania Department of Corrections.  Additionally, plaintiff was on one or more occasions denied a "snack bag" allegedly provided to some other inmates with diabetes, but was told he could buy snack items in the commissary.  Plaintiff alleges that he is forced to work in the kitchen despite having throbbing pain (in his feet, presumably) every day.  Finally, plaintiff alleges that the medical department gave him a pass that allows him to sit down on his job in the kitchen when necessary.

Plaintiff named two types of defendants: corrections personnel (Superintendent Good, Deputy Superintendent Knott, Superintendent Assistant Reifer and Health Care Administrator Sadosky), and medical care providers (Doctor Skerl, and Physician Assistants Mark, Dave, and Stephanie). The medical care providers identified themselves through counsel as Anton Skerl, M.D., P.A. Mark McConnell and P.A. Stephanie Hoover (service was not made on "P.A. Dave," and it is not reasonable to expect service on a defendant identified only by a title and first name), and moved to dismiss the complaint on the basis that the complaint fails to allege a claim against them under any of the three sources of legal right identified by plaintiff: the Eighth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act. The corrections personnel defendants moved to dismiss the complaint or in the alternative for summary judgment on the grounds that they were not personally involved in providing medical care directly to plaintiff and so lacked the mental state necessary for liability under any theory of law. Plaintiff filed a counter motion for judgment on the question of liability, asserting that four inmates have died at the prison (one of a heart attack in 2005, the others of unknown causes at unknown times), that the medical department does not have a podiatrist or a specialist in treating diabetes on staff, and that the prison is only interested in saving money. Plaintiff also alleged in his motion that on one unspecified occasion in November

2006, it looked as though "the medical staff was going to deny me insulin for that day," docket no. 33-1 at 4, because a corrections officer was late in letting him out of his cell for his second daily insulin shot. Plaintiff stops short of claiming that he was denied insulin. Plaintiff throughout the complaint and subsequent pleadings does not allege that he has suffered any harm other than throbbing pain from being forced to work in the kitchen, but plaintiff fears that if he suffers a medical complication to his feet as a result of his diabetes he will not be treated properly.

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true the facts alleged in the complaint and construe them in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Dismissal is only appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Plaintiff mentions the Americans with Disabilities Act, 42 U.S.C.§ 12101, et seq., and the Rehabilitation Act, 29 U.S.C.§ 701, et seq., but makes no serious attempt at stating a claim under them. Defendants' motions to dismiss those purported claims should be granted. Simply citing a statute and tacking it onto the end of the phrase "defendants violated" is not acceptable, even for pro se litigants. Assuming plaintiff's citation to these statutes can be construed as an effort to benefit from protections

4

for persons who are disabled or regarded as disabled, plaintiff neither alleges disability nor facts from which his disability could be inferred. To allege disability for purposes of these statutes it is not enough to claim a medical condition: there must be a substantial limitation caused to a major life activity. See e.g. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002). Certainly diabetes is not a disability under these statutes when it is controlled, as it appears to be in plaintiff's case, by insulin or dietary restrictions. See Sutton v. United Air Lines, 527 U.S. 471 (1999). In Sutton, an ADA case, twin sisters with severe myopia contended they were discriminated against by an airline on the basis of their disability, even though they wore corrective lenses which gave them normal vision. The Supreme Court held that the twins were not disabled, because the disability determination did not depend upon the hypothetical situation the twins would face if they did not wear glasses. 527 U.S. at 482. As applied to this case, it is irrelevant whether diabetes would disable plaintiff if he did not receive insulin because the disability determination "depends on whether the limitations an individual with an impairment *actually* faces are in fact substantially limiting." 527 U.S. at 488 (emphasis in original). Plaintiff does not allege he actually faces any limitations in major life activities as a result of his diabetes, and therefore does not allege disability. See Orr v. Wal-Mart Stores, Inc. 297

5

F.3d 720 (8th Cir.2002); Lawson v. CSX Transportation, Inc., 245 F.3d 916, 924-25 (7th Cir.2001). Plaintiff does not even mention alleged limitations caused by his carpal tunnel syndrome.

As for the Eighth Amendment claim, the relevant law was stated in Estelle v. Gamble, 429 U.S. 97, 106 (1976): prison inmates have a right, derived from the Eighth Amendment, that prison officials not be deliberately indifferent to providing care for their serious medical needs. The "deliberate indifference" element of an Estelle v. Gamble claim to require willful disregard:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994). Since a defendant's state of mind, like other facts, can be proved by circumstantial evidence, the Farmer standard does not require a defendant to admit to knowing consciousness of the risk of serious harm before liability can be imposed. Nevertheless, it must be emphasized that even a gross error of judgment is not a constitutional violation: the state of mind required for is subjective knowledge, not objectively unreasonable ignorance. 511 U.S. at 843, n.8.

Additionally:

> [I]t remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with

6

deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent. In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability **if they responded reasonably to the risk**, even if the harm ultimately was not averted. (my emphasis)

Farmer, 511 U.S. at 844.

The duties legally required from the defendants vary with their different roles. While medical personnel are expected to evaluate the medical needs of inmates, the same is not true of corrections personnel. In the absence of truly unusual circumstances (not alleged here), a prison administrator who delegates medical care decisions to medical personnel within a normally functioning system does not have the requisite subjective state of mind for liability. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004). Plaintiff alleges that prison officials "really" make the medical care decisions at S.C.I. Cresson and that the corrections personnel defendants are aware of his medical needs. This is inadequate: even if the defendants who are not medical personnel have knowledge of an inmate's medical needs, that is not sufficient to constitute deliberate indifference. The motion to dismiss must be granted for the corrections personnel defendants on the Eighth Amendment claim as well.

Turning to the motion to dismiss filed by the medical defendants, plaintiff's allegations interpreted with the lenience

7

afforded to pro se plaintiffs would suffice to allege deliberate indifference. However, it is worth mentioning at the outset that plaintiff's allegation that defendants' treatment decisions are motivated by a desire to save money adds nothing. The allegation is one frequently made by inmate plaintiffs in Estelle v. Gamble claims; the implication intended is that a desire to save money is evidence of indifference. Although I have read some carelessly written opinions which appear to accept that proposition, it is no more valid in Estelle v. Gamble claims than it is in other Eighth Amendment contexts. Because construction, labor, and meal costs far outweigh medical care costs, prison officials undoubtedly have a greater incentive to save money by reducing per inmate living space, the amount of time inmates spend outside their cells, and meal costs. Yet in conditions of confinement cases presenting overcrowding, discipline, and nutrition claims, courts look only at the conditions actually existing and their impact on the inmate plaintiff, not at the state's alleged motives. A prison cell of acceptable dimensions is not rendered unacceptable because it could have been larger if the state had not wanted to save money. Prison living conditions are not unacceptable because the state could have provided recreation facilities and gourmet meals if it had wanted to spend the money. Similarly, a medical treatment decision must be judged on whether it falls below a threshold of care for serious medical needs, not whether more could have been done if the

8

defendants had the desire to spend more money. In fact, to the extent that cost considerations matter to the legal framework of Estelle v. Gamble claims, county prisons which house inmates for shorter periods of time may constitutionally rely on a desire to avoid costs to **deny** some classes of medical care. See Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir.1987), cert. denied, 485 U.S. 991 (1988).

When considering a motion for summary judgment, Fed.R.Civ.P. 56(c) requires the entry of summary judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue of fact is genuinely disputed if the evidence is such that under the applicable substantive law a reasonable jury might return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). As applied here, the question would be whether a jury, examining the record in the light most favorable to plaintiff and properly instructed as to the meaning of deliberate indifference under Farmer, could return a verdict for plaintiff. That is, could any reasonable jury find that defendants know facts from which they have drawn the inference that plaintiff is in serious danger of injury, and are disregarding that serious risk to plaintiff's health? Stated another way, could any

9

reasonable jury conclude that defendants' treatment decisions are not only wrong, but unreasonably wrong?

There is no evidence in plaintiff's motion for summary judgment on the grounds of liability that defendants had or have any reason to believe plaintiff's diabetes required or requires more medical attention than they have provided. If defendants' treatment decisions are wrong plaintiff may have a claim under state law for negligence, but the Eighth Amendment does not make negligence in state-provided medical care a constitutional violation. Plaintiff's motion for partial summary judgment should be denied. In case plaintiff was led by the nature of defendants' motion to believe he did not need to provide any evidence in support of his claim, plaintiff is advised that he must on or before April 21, 2007, come forward with any such evidence. See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)(District courts have the power to order summary judgment sua sponte so long as the parties are notified that they must come forward with all relevant evidence.) Plaintiff must provide medical **expert** evidence that defendants' actions show a culpable state of mind and have caused him harm. When issues of medical treatment are in dispute, unless the medical "matter ... is so simple, and the lack of skill or want of care so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons," expert testimony is necessary to establish both the standard of care (even

10

in a malpractice action) and the causation of injury. See Brannan v. Lankanau Hospital, 490 Pa. 588, 417 A. 2d 196, 201 (1980), quoting Chandler v. Cook, 438 Pa. 447, 451, 265 A.2d 794 (1970). See e.g. Bushman v. Halm, 798 F.2d 651, 658-59 (3d Cir.1986)(expert testimony not necessary under the circumstances to prove causation); Geibel v. United States, 667 F. Supp. 215, 219 (W.D.Pa.1987), aff'd, 845 F.2d 1011 (3d Cir.1988).

There are obvious cases, and they are discussed in Estelle v. Gamble, where no medical testimony is needed to show that an inmate should have received different or more immediate care: the prison doctor's choice of the "easier and less efficacious treatment" of throwing away the prisoner's ear and stitching the stump rather than treating the prisoner after an altercation; the prison doctor's injection of a prisoner with penicillin despite knowledge that he was allergic; the prison doctor's cancellation of prescribed pain medication and requiring prisoner to stand after leg surgery despite the contrary instructions of the operating surgeon. But the proper standard of care in treating diabetes generally or in plaintiff's particular case is not obvious at all. It is simply not possible for the plaintiff base his claim on his own allegations. Defendants may file any supplementary material they would contend entitles them to summary judgment, on or before the date plaintiff's motion is due.

11

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 22 March 2007

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Theodore M. Nickens AY-4528
S.C.I. Cresson
P.O. Box A
Cresson, PA 16699-0001